# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

G.W. DELANEY,              )
                                   )
       Plaintiff,         )        **Case No. 3:06-0065**
                                   )        **Judge Trauger**
v.                         )
                                   )
JOHN E. POTTER, USPS POSTMASTER    )
GENERAL, UNITED STATES POSTAL     )
SERVICE, and, in their official and individual  )
capacities, RON GLEASON, FRED       )
PETERSON, LISA MCDONAUGH, and    )
MIKE BUCHANAN                  )
                                   )
       Defendants.      )

## MEMORANDUM

This matter comes before the court on a Motion to Dismiss and for Summary Judgment filed by the defendants (Docket No. 5), to which the plaintiff has responded (Docket No. 10). For the reasons discussed herein, the defendants' motion for summary judgment will be granted, and the plaintiff's request for leave to amend, made in his response brief (Docket No. 10), will be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiff, G. W. Delaney, was an employee of the U.S. Postal Service in Belle Meade, Tennessee, from December 19, 1998, through March 21, 2002.[1] Mr. Delaney alleges that, during his employment, he was subject to numerous acts of discrimination and harassment

---

[1] Unless otherwise noted, the facts have been drawn from the plaintiff's Complaint (Docket No. 1), attach. Compl., the plaintiff's Affidavit (Docket No. 10), and the Declaration of Dino DeSorbo (Docket No. 7).

1

based on his race, sex, age, and disability, and as retaliation for complaints about discrimination. Among other things, Mr. Delaney alleges that he was sent racial and sexual jokes and pornography through work email, that other employees told him "to be out of Belle Meade by sunset," (Docket No. 1, Complaint, at ¶ 11), that he was assigned onerous work incompatible with his disability, and that he was denied training because his supervisors felt that "a black man with braided hair would scare the customers at Belle Meade." (*Id*. at ¶ 6.)

In March 2002, a situation arose involving Mr. Delaney's granddaughter, Makayla, who is in the legal custody of Mr. Delaney and his wife. Makayla was abducted by relatives living in Arkansas, and Mr. Delaney applied for leave under the Family and Medical Leave Act ("FMLA") in order to retrieve her. Mr. Delaney was denied the requested leave. His supervisors instead suggested to Mr. Delaney that he resign his position, assuring Mr. Delaney that he would be reinstated when he returned. On that basis, and remembering that two white employees had recently resigned and been immediately reinstated, Mr. Delaney followed his supervisors' suggestions, resigned his position, and journeyed to Arkansas in search of his granddaughter. Mr. Delaney was gone for about eight weeks.

When Mr. Delaney requested to return to work, in July 2002, he was not reinstated. Mr. Delaney first approached his (former) immediate supervisor, who told Mr. Delaney that he should initiate the reinstatement process through the Human Resources Department. During the month of October 2002, Mr. Delaney called the Human Resources Department, and was told that he must make his reinstatement request in writing. Mr. Delaney did not send the written request until January or February of 2003. Mr. Delaney attests that he received no response to this letter but learned from a former supervisor, in the summer of 2003, that he had not been recommended

for reinstatement.

Mr. Delaney next contacted his union representatives, who did not return his calls, and the Human Resources Department, which informed him that he would have to "follow the annual procedure" in order to be reinstated. The "annual procedure" seems to have required that Mr. Delaney reapply a year from the date of his first application. On February 23, 2004, Mr. Delaney wrote another letter requesting reinstatement, receiving no response. Because he was no longer employed by the Post Office, Mr. Delaney alleges that he did not believe that he could file a workplace complaint with the United States Equal Employment Opportunity Commission ("EEOC"), and, therefore, he did not do so. Instead, Mr. Delaney returned to the Human Resources Department, where he alleges that an employee sympathetic to his situation advised him to get his personnel record before speaking to an attorney. Thirty days later, Mr. Delaney received his personnel records and copies of other documents he had requested, although he did not receive all of the copies he had requested. Mr. Delaney's reinstatement, according to the EEOC final decision, was denied on February 23, 2004, and again on May 14, 2004. Mr. Delaney did not contact the EEOC, however, until March 14, 2005, ten months after he had last been denied reinstatement.

On January 30, 2006, the plaintiff initiated the present action in this court, alleging (1) violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., through race discrimination, sexual harassment, and the propagation of a hostile work environment, and (2) violation of 42 U.S.C. §§ 1981, 1985, and 1986 through unlawful retaliation, conspiracy to violate civil rights, and neglect to prevent violation of civil rights. On April 3, 2006, the defendants filed a motion to dismiss. In his response brief, filed on May 30, 2006, the plaintiff

sought leave to amend to add causes of action under (1) the Americans with Disabilities Act, 42

U.S.C. § 12101, (2) the Rehabilitation Act, 29 U.S.C.A § 794a (a)(1), (3) the Family Medical

Leave Act, 29 U.S.C. § 2612 et. seq., and (4) the Age Discrimination in Employment Act, 29

U.S.C. § 633.[2]

## ANALYSIS

### I.  Summary Judgment Standard

Federal Rule of Civil Procedure 12(b) states that, where matters outside the pleadings

have been submitted for the court's consideration of a motion to dismiss, the court shall treat the

motion as a motion for summary judgment and shall give the parties a "reasonable opportunity to

present all material made pertinent to such a motion by Rule 56."  Fed. R. Civ. P. 12(b).  The

defendants have filed a Motion to Dismiss, or, Alternatively, for Summary Judgment, and in

support of the motion, the defendants have submitted a Declaration from the manager of Equal

Employment Opportunity Compliance and Appeals for the Southeast Area Office of the United

States Postal Service (U.S.P.S.), as well as several other documents to support their claims. The

plaintiff, in his response, submitted his own affidavit, as well as his wife's, and additional

documents, including his right-to-sue letter.

The court has complete discretion to decide whether or not to consider the additional

materials, *Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997), and in this case, the court has

considered those materials.  The plaintiff argues that, because he asked and was granted leave to

withdraw the right-to-sue letter which he had mistakenly attached to his Complaint, the

---

[2]In the plaintiffs own language, he seeks leave to amend to add "an age discrimination
Act" cause of action.  (Docket No. 10 at p. 19.)  The court will treat this request as if the plaintiff
had named the proper statute.

4

defendants' motion can only properly be considered a Motion to Dismiss. However, because the defendants submitted their own supporting documents, and the plaintiff was given a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56," Fed. R. Civ. P. 12(b), the defendants' motions to dismiss will be treated as motions for summary judgment. *See Higgason v. Stephens*, 288 F.3d 868, 874 (6th Cir. 2002); *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204-05 (6th Cir. 1998); *Fugarino v. Hartford Life & Accident Ins. Co*., 969 F.2d 178, 182-83 (6th Cir. 1992).

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must demonstrate the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd*., 224 F.3d 797, 800 (6th Cir. 2000). Our function "is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the

case—provided that the nonmoving party bears the burden for that element—the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To avoid summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). And we must keep in mind that "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. Finally, "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49). With this standard in mind, the court turns to an analysis of the plaintiff's claims.

## II. The Defendants' Motion for Summary Judgment

The defendants move for summary judgment on the plaintiff's gender, race, and Equal Employment Opportunity ("EEO") reprisal discrimination claims—which are grounded in the U.S. Constitution, the Tennessee Constitution, Tennessee common law, and Title 42, U.S.C. §§ 1981, 1985, and 1986—on the basis that those claims are preempted by Title VII. The defendants further move to dismiss the plaintiff's claims against all defendants but the Postmaster General, who is, they assert, the only proper defendant under Title VII. Finally, the

6

defendants move to dismiss the plaintiff's Title VII claim on the merits because the plaintiff failed to exhaust his administrative remedies. Because Title VII preempts all other claims based on gender, race, and EEO reprisal, and because the plaintiff failed to exhaust his administrative remedies by timely filing a complaint with the EEOC, the defendants' motion for summary judgment will be granted.[3]

## A. Title VII Preemption

The defendants assert that the plaintiff's claims of gender and race discrimination as well as retaliation can be brought exclusively under § 717 of Title VII (42 U.S.C. § 2000e-16(c)) and, therefore, that the plaintiff's claims under the U.S. Constitution, the Tennessee Constitution, Tennessee common law, and 42 U.S.C. §§ 1981, 1985, and 1986 are preempted by that act. The defendants are correct. In *Brown v. General Services Administration*, 425 U.S. 820 (1976), the Supreme Court held that Title VII is the preemptive and exclusive remedy for federal employment discrimination falling under Title VII. Therefore, the court will dismiss the

---

[3]Although the plaintiff's failure to exhaust his administrative remedies as to his Title VII claim and the preemption of the plaintiff's other claims renders the issue moot, the court notes that the Postmaster General appears to be the only proper defendant in a Title VII action against the U.S.P.S. *See* 42 U.S.C. § 2000e-16(c) ("[T]he head of the department, agency, or unit...shall be the defendant.")*; Soto v. U.S. Postal Service*, 905 F.2d 537, 539 (1st Cir. 1990); *Lamb v. U.S. Postal Service*, 852 F.2d 845, 846 (5th Cir. 1988); *McGuinness v. U.S. Postal Service*, 744 F.2d 1318, 1323 (7th Cir. 1984); *Mahoney v. U.S. Postal Service*, 884 F.2d 1194, 1196 (9th Cir. 1989); *see also Hancock v. Egger*, 848 F.2d 87, 89 (6th Cir.1988) (finding that the head of the agency was the proper defendant and "the proper defendant was not named in this action. Adherence to the statute's requirements is mandatory, and we are neither authorized nor inclined to ignore its mandate.") Furthermore, as a district court in the Sixth Circuit has noted, "[a]lthough the Sixth Circuit has not yet ruled on this issue, several circuits have expressly held that the head of a federal agency or department is the only proper defendant in a Rehabilitation Act and ADEA action, as in a Title VII action." *McGhee v. U.S. Postal Service*, 2006 WL 1851261, *2 (E.D. Mich 2006).

7

plaintiff's constitutional, state, and §§ 1981, 1985, and 1986 claims.[4]

The plaintiff in *Brown* brought his action for race discrimination under the general federal question statute, the Declaratory Judgment Act, 42 U.S.C. § 1981, and Title VII. *Id.* at 820, 823-24. The Court dismissed all non-Title VII claims, reasoning that Congress, in amending Title VII to include federal employees, had acted under the belief that those employees had no other judicial remedy. *Id.* at 825, 828. Aside from the Congressional record, the Court reasoned that the text of the amendment itself, in its "balance, completeness, and structural integrity" was not "designed merely to supplement other putative judicial relief" but instead to create an exclusive remedial framework. *Id* at 832. Moreover, the Court reasoned that the administrative relief provided by the statute would be bypassed by any relief awarded under other statutes and that it "would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading." *Id.* at 833. The Court concluded that the principle that a "narrowly-tailored" statute such as Title VII preempts a more general statute "leads unerringly to the conclusion that § 717 of the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment." *Id.* at 835. *See also Steiner v. Henderson*, 354 F.3d 432,

---

[4]The plaintiff, in his memorandum opposing the defendants' motion, seeks leave to amend his complaint to add claims of employment discrimination under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973, based on his disability, as well as claims under the Age Discrimination in Employment Act ("ADEA") and the Family Medical Leave Act ("FMLA"). Because these claims could not be asserted in a Title VII suit, they are not subject to preemption. *Ethnic Employees of Library of Congress*, 751 F.2d at 1415-16 (finding that those EEOC claims which could not be brought under Title VII were not preempted because "Congress did not intend for Title VII to displace those claims"). However, the plaintiff will not be granted leave to amend to add those claims, because they are precluded by the plaintiff's failure to exhaust his administrative remedies, or are otherwise untimely, as discussed below.

Case 3:06-cv-00065   Document 11   Filed 08/24/06   Page 8 of 18 PageID #: 169

434 (6th Cir. 2003) (noting that Title VII is the exclusive judicial remedy for federal employment discrimination claims).[5]

The principles of *Brown* have been applied to each of the claims brought by the plaintiff. *Brown* itself involved a § 1981 claim. 425 U.S. at 823-24. In *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979), the Supreme Court likewise held that the "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." Additionally, federal courts have found that "federal employees may not bring suit under the Constitution for employment discrimination that is actionable under Title VII." *Ethnic Employees of Library of Congress v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985). In *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984), the Sixth Circuit, describing the *Brown* decision, noted that the "Court found that employment discrimination by the federal government clearly violated the Constitution and a statute before adoption of the 1972 amendment, but that the remedies were ineffective" due to preemption. In *Vaden v. U.S. Postal Serv.*, 1986 WL 16747, *2 (6th Cir. 1986), the Sixth Circuit dismissed a postal worker's argument that retaliatory employment actions violated Tenn. Code Ann. § 4-21-124, finding that "[t]o the extent the plaintiff attempted to raise a claim of retaliation, his exclusive remedy as a federal employee is § 717 of Title VII."(unpublished opinion).

---

[5]The plaintiff cites *Henry v. Schlesinger*, 407 F. Supp. 1179 (E.D. Pa. 1976) for the proposition that an employment discrimination action can proceed under both § 1981 and Title VII. However, inasmuch as *Schlesinger*, which was decided five months before the Supreme Court's *Brown* decision, holds that Title VII is not the exclusive means of redress against the federal government in an employment discrimination action, it cannot survive the Supreme Court's contrary holding in *Brown*. Under *Brown*, the plaintiff cannot bring a Title VII action under "less demanding statutes," and instead, Title VII is the preemptive and exclusive remedy. *Brown*, 425 U.S. at 833.

9

Although the court has found no case specifically holding that a § 1986 claim is preempted by Title VII, the plaintiff himself predicates his § 1986 claim on a finding of liability under § 1985, which was held to be preempted by Title VII in *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. at 378. (Docket No. 10, Pl.'s Resp. Opposing Def.'s Motion to Dismiss,  at 20).  All of the plaintiff's race, gender, and retaliation claims are preempted by Title VII.

### B.    Exhaustion of Administrative Remedies

The defendants move for summary judgment on the merits of the plaintiff's Title VII claim, contending that the plaintiff has failed to exhaust his administrative remedies because he did not timely contact an EEOC counselor.  The court finds that the plaintiff did in fact fail to exhaust his administrative remedies because he did not initiate contact with a counselor until ten months after the last adverse employment action alleged.  Because there is no basis for tolling the limitations requirement for those ten months, the defendants are entitled to summary judgment on the plaintiff's Title VII claims.

In order to exhaust his administrative remedies, a plaintiff must make timely contact with the EEOC.  *McFarland v. Henderson*, 307 F. 3d 402, 406 (6th Cir. 2002) ("In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'") (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976)).  The Sixth Circuit has further elaborated:

> [A] federal employee claiming discrimination must contact an Equal Employment Opportunity ("EEO") counselor within forty-five days of an alleged discriminatory occurrence. . . . Failure to do so is cause for dismissal of the complaint by the agency . . . as well as by the district court.  *Steiner v. Henderson*, 354 F.3d 432, 435 (6th Cir. 2003) (internal citations omitted).

10

Under 29 C.F.R. § 1614.105(a)(1), a federal employee complaining of discrimination "must initiate contact with a Counselor within 45 days" of the discriminatory act or personnel action in order to seek an administrative remedy. This deadline can be extended in cases where an individual was not notified of the time limits, could not reasonably have known of the act, or was unable to contact the counselor despite due diligence. *Id.* § 1614.105(a)(2).

The plaintiff left his job March 21, 2002, under the misapprehension, allegedly fostered by his supervisors, that he would be reinstated whenever he chose to return. He contacted his supervisor in the summer of 2002 and requested reinstatement by letter many months later (in January or February of 2003) but received no response. He again requested reinstatement a year later, in February of 2004. The DRS Inquiry Report shows that initial contact with the EEO office was made on March 14, 2005, and that the incident complained of occurred on May 14, 2004. This was apparently the date of a denial of his request for reinstatement. Given that ten months elapsed between the time the plaintiff learned of the denial of his reinstatement and his contact with the EEOC, barring equitable tolling of the deadline, the plaintiff has failed to meet this prerequisite for his federal action. *McDonnell Douglas*, 411 U.S. at 798; *see also Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991) (holding that the district court correctly dismissed the action because "[n]ot only did [the plaintiff] fail to see an EEO counselor within thirty days of the relevant open period, he also failed to see a counselor within thirty days of...the day he received notice of the denial of his application"); *Johnson v. Bergland*, 614 F.2d 415, 418 (5th Cir. 1980) ("[I]f the agency does not reach the merits of the complaint because the complainant fails to comply with the administrative procedures the Court should not reach the merits either. Otherwise, the complainant might be dilatory at the administrative level, knowing that he can get

11

into federal court anyway."); *Ettinger v. Johnson*, 518 F.2d 648, 652 (3rd Cir. 1975) (finding that the plaintiff "runs afoul of the exhaustion doctrine ...if she failed ...to bring her complaints to the attention of the counselor within the time limits prescribed"); *Roman-Martinez v.Runyon*, 100 F.3d 213 (1st Cir. 1996).

The plaintiff contends, nevertheless, that his right-to-sue letter demonstrates that he has in fact exhausted all of his administrative remedies. Indeed, without a right-to-sue letter, a Title VII action is subject to dismissal. *Portis v. Ohio*, 141 F.3d 632, 635 (6th Cir. 1998); *Williams v. Washington Metropolitan Area Transit Authority*, 721 F.2d 1412, 1413 (D.C. Cir. 1983). However, the right-to-sue letter is a necessary, but not sufficient, requirement. The letter is merely one of two prerequisites for bringing a Title VII action. In addition to receiving and acting upon a right-to-sue notice, the complainant must have filed timely charges of employment discrimination with the EEOC. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974); *Parsons v. Yellow Freight Sys., Inc.*, 741 F.2d 871, 873 (6th Cir. 1984); *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989). As discussed above, the plaintiff did not file his charges with the EEOC in a timely manner.

While the plaintiff undeniably failed to contact his EEOC counselor within 45 days, this time limit may be waived upon the demands of equity. *Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982); *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1031 (6th Cir. 1998); *Puckett*, 889 F. 2d at 1486. Equitable tolling, however, is sparingly granted. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). In determining whether or not to

12

grant tolling of the EEOC filing requirement, the court must consider five factors: (1) lack of

notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3)

diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the

plaintiff's reasonableness in remaining ignorant of the particular legal requirement. *Seay v.

Tennessee Valley Auth.*, 339 F.3d 454, 469 (6th Cir. 2003); *Truitt v. County of Wayne*, 148 F.3d

644 (6th Cir. 1998); *Graham-Humphreys*, 209 F.3d at 561. These factors are not inflexible, and

tolling must be analyzed on a case-by-case basis. *Id.* The plaintiff has the burden of

demonstrating diligence. *Seay*, 339 F.3d at 469.

The plaintiff has presented no argument to this court in favor of equitable tolling;

however, the court will analyze whether or not tolling should be applied using the record at hand.

The record shows that, when the plaintiff first applied to the Post Office for rehire in early 2003,

he did not receive a response. He learned many months later, in the summer of 2003, that he had

not been recommended for rehire. At this time, because he was not employed by the Post Office,

the plaintiff did not believe that he could file a workplace complaint. The plaintiff, therefore, did

not have actual notice of the requirement. However, the EEOC DRS Inquiry Report indicates

that a poster displaying the time limit was verified to be on display at the facility in question

during May 2004. This poster informed both employees and applicants for employment, like the

plaintiff, of their rights. The plaintiff physically visited the Human Resources Department and

can be said to have had constructive knowledge of the requirement. Moreover, "a reasonably

cautious and prudent Title VII claimant...would, as a modest precaution, assume that limitations

began passing on or near the earliest potential date." *Graham-Humphreys*, 209 F.3d at 561.

Therefore, the plaintiff had constructive knowledge of the requirement.

In addition, the plaintiff was not diligent in pursuing his rights. The plaintiff's affidavit stated that he was absent for eight weeks, during which he retrieved his granddaughter. However, the plaintiff did not contact his supervisor to request reinstatement until late July 2002, some two months after he returned. When the plaintiff's supervisor informed the plaintiff that he should contact the Human Resources Department, the plaintiff waited three months—until October 2002—to do so, and, when the Human Resources Department instructed the plaintiff to send a written request, the plaintiff waited three more months—until January 2003—before complying.

The plaintiff first learned he had not been recommended for reinstatement during the summer of 2003. The plaintiff requested reinstatement again in 2004 and was denied it in February 2004, and again in May 2004. The plaintiff did not initiate contact with an EEOC counselor until March 14, 2005. That is, the plaintiff allowed ten months to pass between learning of the denial of his reinstatement and his first contact with the EEOC. The substantial gaps in the plaintiff's course of action during each step in his attempt for reinstatement indicate that he has not acted with the diligence required for equitable tolling.

In addition, the above facts highlight the plaintiff's unreasonableness in remaining ignorant of the filing requirement. In 2004, after his second request to be reinstated, the plaintiff consulted with a sympathetic employee at the Post Office Human Resources Department, and that employee advised him not to consult a lawyer until after he had reviewed his personnel file. The documents in question were made available about thirty days later. While the plaintiff may have put off legal consultation in reliance on the defendants' advice, this delay was, by his own testimony, no longer than roughly thirty days, and could not have tolled the limitations

requirement for ten months.  Because the filing period cannot be tolled, then the plaintiff's delay in contacting the EEOC caused him to fail to meet one of the prerequisites for bringing a federal action under Title VII, and the defendants are entitled to summary judgment.  *See McDonnell Douglas*, 411 U.S. at 798.

### III.    The Plaintiff's Request for Leave to Add Claims Under the ADA, the Rehabilitation Act, the ADEA, and the FMLA

In its response brief, the plaintiff seeks leave to add claims under the ADA, the Rehabilitation Act, the ADEA, and the FMLA.  Leave to amend a complaint is generally "freely given when justice so requires." Fed. R. Civ. P. 15(a).  However, leave may be denied in cases where amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Because the plaintiff cannot state a claim under any of those statutes, leave to amend would be futile and will not be granted.

The plaintiff cannot state a claim for disability discrimination under the ADA, because the Rehabilitation Act is the exclusive remedy for federal employees claiming disability discrimination.  *See Boyd v. United States Postal Serv.,* 752 F.2d 410, 413 (9th Cir. 1985);  *Hall v. United States Postal Serv.,* 857 F.2d 1073 (6th Cir.1988) (noting that the plaintiff did not dispute district court's dismissal of state law claims on basis that Rehabilitation Act is the sole remedy for federal employees); *Plautz v. Potter*, 156 Fed. Appx. 812, 815-816 (6th Cir. 2005) (unpublished opinion).  Therefore, any claim that the plaintiff might allege under the ADA would be preempted by the Rehabilitation Act.

The plaintiff's claims under the Rehabilitation Act are, like his Title VII claims, precluded for failure to exhaust administrative remedies.  The Rehabilitation Act has the same

Case 3:06-cv-00065   Document 11   Filed 08/24/06   Page 15 of 18 PageID #: 176

requirements and procedures as Title VII. 29 U.S.C.A § 794a (a)(1). Under those requirements, the complainant must contact an EEOC counselor within 45 days of the event in question and obtain a right-to-sue letter. 29 C.F.R. § 1614.105. Even at this time, the plaintiff has failed to bring any discrimination complaint based on his disability to the attention of the EEOC. While both the EEOC forms on record contain a space to report discrimination based on disability, no such complaint is indicated. Moreover, the plaintiff's right-to-sue letter mentions race, sex, age and reprisal discrimination but, conspicuously, does not mention any disability claims. The plaintiff has therefore failed both prerequisites of (1) filing timely charges and (2) receiving and acting upon the right-to-sue notice. *McDonnell Douglas*, 411 U.S. at 798.

As with any potential claims under the Rehabilitation Act, the plaintiff's claims for age discrimination would also be precluded for failure to exhaust administrative remedies or for failure to file within the statute of limitations. A federal employee who wishes to assert age-based discrimination must file charges with an EEOC counselor within 45 days of the alleged incident. 29 U.S.C.A. §1614.105(a)(1); *Burzynski v. Cohen*, 264 F.3d 611, 617 (6th Cir. 2001). Federal employees may bypass administrative relief by giving notice of intent to sue and filing a claim in federal court. *Stevens v. Department of the Treasury,* 500 U.S. 1, 5-6 (1991); *Burzynski*, 264 F.3d at 617. However, if a plaintiff chooses to bypass the administrative remedy, the federal action must be filed within 180 days of the alleged discrimination. *Id.* at 6; 29 U.S.C.A. § 633a(d). That is, the employee must either exhaust the administrative remedies or, alternatively, give thirty days' notice of his intent to sue in federal court and commence the action within 180 days of the alleged discrimination. *Anderson v. Tennessee Valley Auth.*, 1993 WL 113730, *8 (6th Cir. 1993) (unpublished opinion); *Ivey v. Rice,* 759 F.Supp. 394, 402, (S.D. Ohio 1991),

16

*affirmed* 961 F.2d 1577 (6th Cir.1992); *Thorne v. Cavazos,* 744 F.Supp. 348, 350-51 (D.D.C.1990). Here, the plaintiff has not commenced the action within 180 days of the alleged discriminatory acts, nor did he file a complaint with the EEOC within 45 days. Because he has neither exhausted his administrative remedies nor filed suit in the requisite time period, the plaintiff's age discrimination claims would be barred.

Finally, the plaintiff seeks leave to add a cause of action under the Family Medical Leave Act ("FMLA"). The FMLA allows an employee to take up to 12 weeks of leave per year due to the birth or adoption of a child, a serious health condition in the employee, or a serious health condition in the son, daughter, parent or spouse of the employee. 29 U.S.C.A. § 2612(a)(1). The plaintiff's claim arises from his journey to Arkansas to retrieve his granddaughter, of whom he had custody—which, while commendable, does not appear to fall under any of those categories—but in any case would be barred by the FMLA's statute of limitations. That statute provides that an action may be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C.A. § 2617(c)(1). In his affidavit, the plaintiff states that, in March 2002, "I believed that I was within the hours for permitting me to qualify for a second FMLA leave and I told Lisa McDonaugh [the supervisor] this but she never denied it but still denied the leave." (Docket No. 10, Delany Aff. at ¶ 6.) Any violation of the FMLA would have to have occurred at that time, in March 2002. This action commenced Jan. 30, 2006 and is, therefore, barred by the FMLA's two-year statute of limitations.

The plaintiff's ADA claim would be preempted by the Rehabilitation Act, his Rehabilitation Act claim would fail for failure to exhaust administrative remedies, his ADEA

17

claim would fail for failure either to exhaust administrative remedies or to commence the action within 180 days of the discriminatory act, and his FMLA claim would be barred by the statute of limitations. Amendment would be futile, and leave to amend is denied.

## CONCLUSION

For the reasons stated herein, the defendant's Motion for Summary Judgment will be granted, the plaintiff's request for leave to amend the complaint will be denied, and this case will be dismissed.

An appropriate order will enter.


_____
ALETA A. TRAUGER
United States District Judge

Case 3:06-cv-00065   Document 11   Filed 08/24/06   Page 18 of 18 PageID #: 179